PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MEYERS, | ) | |
| | ) | CASE NO. 1:14CV1604 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| PAUL MITROVICH, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

Pending before the Court are Defendants' Motions to Dismiss (ECF Nos. 8, 9, 17, 18, and 19), Plaintiff's Motion for Preliminary Injunction (ECF No. 2), Plaintiff's Motion for Objection and/or Motion to Strike Defendant Paul Mitrovich's Motion to Dismiss (ECF No. 22), Plaintiff's Motion for Declaratory Judgment (ECF No. 23), Plaintiff's Motion for Demand for Default Judgment (ECF No. 25), Plaintiff's Objection to and/or Motion to Strike Defendant Mitrovich's Reply in Support of Motion to Dismiss (ECF No. 32), and Plaintiff's Objection and/or Motion to Strike Defendants' (Smith, Shannon, Szeman, and Byers) Motions to Dismiss and Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 34). For the reasons that follow, the Court grants Defendants' Motions to Dismiss; denies all other pending Motions; and dismisses this action.

**I.  Background**

At approximately 12:20 a.m. on January 20, 2013, Madison Village Police Officer Michael Smith ("Smith") observed a red pick-up truck with heavily-tinted windows and a burned out rear license plate light exiting the highway. *See State v. Meyers*, Nos. 2013–L–042, 2013–L–043, 2014

(1:14cv1604)

WL 1348920 (Ohio App. 11 Dist. Mar. 31, 2014). Smith signaled for the vehicle to pull over to the curb to discuss these equipment violations with the driver. *Id.* Before exiting his patrol car, Smith entered the truck's license plate number in his mobile data terminal and discovered that the owner, Robert Meyers ("Meyers"), was licensed to carry a concealed firearm. *Id.*

Smith's patrol car was equipped with a dashboard camera which recorded the incident. Smith approached the driver's side of the truck, and Meyers rolled down his window. *Id.* Smith asked Meyers for his license and proof of insurance. While Meyers was retrieving his paperwork, Smith scanned the inside of the vehicle with a flashlight. *Id.* Meyers handed his driver's license to Smith; the officer examined the driver's license and inquired of Meyers where he was coming from and what he was doing that evening.

After this brief exchange, Meyers volunteered that he had a concealed carry permit. *Id.* Smith asked if he had his weapon with him in the car and Plaintiff responded that he did. *Id.* Smith testified at trial that at that point he observed a handgun on the vehicle floor near the gas pedal. *Id.* Smith then drew his service revolver and ordered Meyers not to reach for the weapon and to keep his hands on the steering wheel. *Id.* Meyers did not comply with that request and Officer Smith immediately ordered Meyers to get out of the vehicle. *Id.* Meyers alleges Smith threatened to "blow his head off." (ECF No. 1 at 4). Meyers claims that Smith then remembered that his actions were being recorded, calmly repeated his request for Meyers to exit his vehicle and holstered his gun. (ECF No. 1 at 4). When Meyers complied, Smith handcuffed Meyers and ordered him to stand against the side of the truck while they waited for back-up to arrive. *Id.* During this time, Smith questioned Meyers. *Id.*

2

(1:14cv1604)

Sergeant Matthew Byers arrived approximately five minutes later.  *Id.*  Meyers was placed in the back of Smith's patrol car.  *Id.*  While in the patrol car, Smith detected the odor of alcohol, which he had not previously detected due to the high winds outside.  *Id.*  Byers requested Meyers perform a field sobriety test, which Meyers refused.  (ECF No. 1 at 4); *Id.*  Smith took photographs of the inside of the truck; noting that the handgun's action was open with the slide locked back and that there was a fully-loaded magazine and a holster on the floor near the driver's seat.  *Id.*  A second loaded magazine was discovered in the glove compartment during the vehicle inventory search that followed Meyers's arrest.  *Id.*

Smith and Byers both testified at trial that Meyers smelled of alcohol, had slurred speech, repeated questions many times, and had difficulty remembering or understanding the questions.  *Id.* Meyers was informed that he was under arrest, Mirandized, and transported to the jail.

Meyers was charged in Painesville Municipal Court with using weapons while intoxicated and improperly handling firearms in a motor vehicle.  *Id.*  He was also cited for unlawful window tint and for not having any rear license plate illumination.  *Id.*  He pled not guilty to all charges.  *Id.* Judge Michael A. Cicconetti presided over the case in the pre-trial stages; however, Visiting Judge Paul H. Mitrovich was appointed to preside over the trial.  Madison Law Director Joseph Szeman was the prosecutor in the case.  Meyers was convicted on all charges.

Meyers appealed his conviction to the Ohio Eleventh District Court of Appeals asserting five assignments of error.  *Id.*  The Court of Appeals affirmed his conviction on four assignments of error but found that the trial court instructed the jury on a prior version of Ohio Revised Code § 2923.16(C) pertaining to improperly handling firearms in a motor vehicle.  *Id.*  The Court of Appeals

(1:14cv1604)

reversed his conviction on that charge alone, and remanded it to the trial court for a new trial. *Id.*

His convictions for using weapons while intoxicated and his traffic citations for unlawful tint and

improper rear license plate illumination were affirmed. *Id.* The State declined to retry Meyers on

the charge of improperly handling a firearm in a motor vehicle. *Id.*

Meyers has now filed this civil rights action against Mitrovich, Szeman, Shannon, Smith, and

Byers. He asserts seven causes of action, although several of them are repetitive. He claims Smith

used excessive force against him during his arrest and Shannon is also liable to him for damages

because she failed to properly train Smith or discipline him for his actions. He next contends his

weapons were confiscated without due process. Third, he asserts claims for malicious prosecution

against Szeman. Finally, he asserts claims for civil conspiracy under 42 U.S.C. §§ 1983, 1985, and

1986 against all of the Defendants claiming they conspired to: (1) cover up the use of excessive force

during his arrest; (2) deprive him of his weapons without due process; (3) subject him to malicious

prosecution; (4) deny him equal protection; and (5) prevent him from presenting evidence of the

Defendants' criminal violations to a grand jury. He seeks monetary and injunctive relief.

Each of the Defendants filed a Motion to Dismiss under Federal Civil Procedure Rule 12(b).

Byers filed a Motion to Dismiss under Rule 12(b)(6) (ECF No. 8) on August 13, 2014 stating

Plaintiff did not allege any facts to suggest he personally engaged in any of the conduct described

in the Complaint and did not include him in any of his legal causes of action. He contends Plaintiff

therefore failed to state upon which relief could be granted against him.

Mitrovich filed a Motion to Dismiss under Rule 12(b)(1) and Rule 12(b)(6) (ECF No. 9) on

August 13, 2014. He states that Meyers is challenging decisions he made in the course of Meyers's

4

(1:14cv1604)

criminal prosecution and the Court lacks subject matter jurisdiction to conduct appellate review of these decisions under the *Rooker-Feldman* Doctrine.  He also claims he is entitled to absolute immunity for claims stemming from decisions he made on the bench.

Shannon, Smith, and Szeman obtained leave to file an Answer or Motion to Dismiss on or before September 12, 2014.  They each filed a Motion to Dismiss pursuant to Rule 12(b)(6) on September 12, 2014.  In their Motions (ECF Nos. 17, 18, and 19), they contend that the claims asserted against them in their official capacities are based on *respondeat superior* and should be dismissed.  They also assert Meyers's conspiracy claims are devoid of factual allegations to support them.  Szeman asserts he is entitled to absolute prosecutorial immunity (ECF No. 18) and Shannon asserts that claims against her in her individual capacity are also based on *respondeat superior* and should be dismissed.  (ECF No. 19).

Meyers objects to Judge Mitrovich's claim of absolute judicial immunity.  (ECF Nos. 22, 23, 32).  He contends Judge Mitrovich lacked jurisdiction to preside over his criminal case because he was never issued a Certificate of Assignment by the Ohio Supreme Court.  Judge Mitrovich responded to Meyers's assertion by providing a copy of the Certificate of Assignment, signed by the Chief Justice of the Ohio Supreme Court, appointing him to preside in the Painesville Municipal Court for the months of April 2013 through June 2013, and to conclude any proceedings in which he participated that were pending at the end of his appointment period.  (ECF No. 26-1 at 1).

Meyers also filed a Motion for Default Judgment for Failure to Appear (ECF No. 25) on September 23, 2014.  He claimed he served the Defendants on July 25, 2014.  He indicated Szeman, Shannon and Smith failed to submit a responsive pleading within twenty-one days after service.  He

5

(1:14cv1604)

demands the Court Clerk enter default against these Defendants.

## II.  Motion for Default Judgment

Federal Civil Procedure Rule12(a)(1) provides that unless another time is specified by this Rule or by federal statute, the time for filing an Answer or responsive pleading is 21 days after service of the Summons and Complaint.  Before serving an Answer, a party may file a Motion to Dismiss asserting any of the grounds listed in Rule 12.  The filing of such a Motion alters the time period for filing an Answer, in the event that the Motion is denied.  Fed.R.Civ.P. 12(a)(4).

The method of computing time is found in Federal Civil Procedure Rule 6(a).  When calculating the 21 days to file an Answer or responsive pleading, the day of service is excluded. Fed.R.Civ.P. 6(a)(1)(A).  Thereafter, every day, including Saturdays, Sundays and legal holidays are counted.  Fed.R.Civ.P. 6(a)(1)(B).  If the last day of the period falls on a Saturday, Sunday or legal holiday, however, the response is due by the end of the next business day that is not a legal holiday. Fed.R.Civ.P. 6(a)(1)(C).  The last day of the period ends for those filing electronically at midnight in the Court's time zone, or for those filing manually, at the time the Clerk's office is scheduled to close.  Fed.R.Civ.P. 6(a)(4)(A) and (B).

The Court may extend the time for filing a responsive pleading.  Fed.R.Civ.P. 6(b)(1).  If a Motion is made to the Court before the original time expires, the Court may allow an extension of time for good cause.  Fed.R.Civ.P. 6(b)(1)(A).  If the request is made after the original time expires, the Court may grant an extension if good cause is shown and the party failed to act because of excusable neglect.  Fed.R.Civ.P. 6(b)(1)(B).

Here, Meyers indicates he perfected service on Shannon, Smith, and Szeman on July 25,

6

(1:14cv1604)

2014.  (ECF No. 10).  They filed a Motion for Leave to Plead until September 12, 2014 on August

25, 2014.  (ECF No. 12).  That Motion was granted on September 2, 2014.  All three Defendants

filed a Motion to Dismiss on September 12, 2014.  Because their Motions were filed on or before

the responsive pleading deadline ordered by the Court, they are not in default.  Meyers's Motion for

Default Judgment for Failure to Appear (ECF No. 25) is denied.

### III.  Standard of Review Motion to Dismiss

**Federal Civil Procedure Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the

subject matter" of claims asserted in the Complaint. Fed.R.Civ.P. 12(b)(1).  Generally, Fed.R.Civ.P.

12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1);

*United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994).  In a facial attack, the challenger asserts

that the allegations contained in a Complaint are insufficient on their face to invoke federal

jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Title Ins.*

*Antitrust Cases*, 702 F.Supp.2d 840, 884-85 (N.D. Ohio 2010).  When a Defendant facially attacks

subject matter jurisdiction, this Court must accept the Plaintiff's material allegations in the

Complaint as true. *Ritchie*, 15 F.3d at 598.  By contrast, in a factual attack, the challenger disputes

the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.*  No

presumptive truthfulness applies to the factual allegations, and the Court is free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case. *Ohio Hosp. Ass'n v.*

*Shalala*, 978 F.Supp. 735, 739 (N.D. Ohio. 1997).  The Plaintiff has the burden of proving subject

matter jurisdiction in order to survive a Motion to Dismiss pursuant to Rule 12(b)(1).

(1:14cv1604)

*Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Moreover, while *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court may dismiss an action *sua sponte* if the Complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the Court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).

**Federal Civil Procedure Rule 12(b)(6)**

In deciding a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the Complaint as true and construe those allegations in a light most favorable to the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a Court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, claims set forth in a Complaint must be plausible, rather than conceivable. *Id.* at 570. "[W]here the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not 'show[n]'-'that

8

(1:14cv1604)

the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)).  The

factual allegations in the Complaint "must contain something more ... than ... merely creat[ing] a

suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555-56 (quoting 5 C. Wright & A.

Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)).  In addition to reviewing

the claims set forth in the Complaint, a court may also consider exhibits, public records, and items

appearing in the record of the case as long as the items are referenced in the Complaint and are

central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430

(6th Cir. 2008); *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir. 2012).

## IV.  Law and Analysis

### A.  Matthew Byers

In his Motion to Dismiss under Rule 12(b)(6) (ECF No. 8), Byers asserts Meyers did not

allege any facts to suggest he personally engaged in any of the conduct described in the Complaint

and therefore failed to state upon which relief could be granted against him.  Meyers cannot establish

the liability of any Defendant absent a clear showing that the Defendant was personally involved in

the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423

U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20,

1995).  In the Complaint, Meyers alleges Byers was called to provide back up to Smith.  Byers also

requested Meyers perform a field sobriety test, which Meyers refused.  (ECF No. 1 at 4); *Id.*  There

are no other allegations against Byers and no legal claims appear to be asserted against him.  Meyers

does not allege facts to suggest Byers took part in any of the conduct which gives rise to the claims

he asserts.  For this reason, he has not stated a claim for relief against Byers that is plausible on its

(1:14cv1604)

face.  *Twombly*, 550 U.S. at 555.  Byers's  Motion to Dismiss (ECF No. 8) is **granted**.

### B.  Paul Mitrovich

In his Motion to Dismiss (ECF No. 9), Mitrovich asserts the claims against him should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to conduct appellate review of a state court judgment under the *Rooker-Feldman* Doctrine, and under Rule 12(b)(6) because he is entitled to judicial absolute immunity for claims stemming from decisions he made in the course of presiding over Meyers's criminal prosecution.

#### 1.  Rooker-Feldman

Mitrovich first asserts Meyers is challenging the validity of judicial decisions made in the course of his criminal trial.  United States District Courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).  Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari.  *Id.*  Under this principle, generally referred to as the *Rooker-Feldman* Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights.  *Berry v. Schmitt* 688 F.3d 290, 298-99 (6th Cir. 2012).

The *Rooker-Feldman* doctrine is based on two United States Supreme Court decisions

(1:14cv1604)

interpreting 28 U.S.C. § 1257(a).[1]  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of those judgments to file a writ of certiorari with the United States Supreme Court.  The *Rooker-Feldman* doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts.  *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 308-11 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

*Rooker-Feldman* is a doctrine with narrow application.  It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court."  *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99.  It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion.  *Berry*, 688 F.3d 299.  Instead, the *Rooker-Feldman*

---

[1]     28 U.S.C. § 1257(a) provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

(1:14cv1604)

doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether *Rooker-Feldman* bars a claim, the Court must look to the "source of the injury the Plaintiff alleges in the federal Complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310.  If the source of the Plaintiff's injury is the state-court judgment itself, then the *Rooker-Feldman* doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the Plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368-69.  In conducting this inquiry, the Court should also consider the Plaintiff's requested relief. *Evans v. Cordray*, No. 09-3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

While Plaintiff bases his civil rights claims on decisions made by Judge Mitrovich, it is unclear from the Complaint whether he is seeking appellate review of those decisions or his conviction.  He claims Judge Mitrovich violated his constitutional rights when he reversed an order of Judge Cicconetti, prohibited him from using prior suppression hearing transcripts to impeach witnesses, "systematically denied" his right to cross-examine witness, and permitted the prosecutor to withhold exculpatory evidence. (ECF No. 1 at 5).  He states he "files by Right a 42 U.S.C. 1983 on conviction/sentence reversed/vacated as determined by the US Supreme Court." (ECF No. 1 at 6-7 ¶ 19).  He also seeks $ 4,000,000.00 in damages.  To the extent Meyers is asking this Court to vacate his conviction, under the *Rooker-Feldman* Doctrine, the Court lacks subject matter jurisdiction to grant that request.

(1:14cv1604)

To the extent Meyers is simply seeking damages from the Judge for making decisions unfavorable to him, *Rooker-Feldman* would not apply.  Meyers still could not assert these claims, however, if a favorable judgment on those claims would call the validity of this conviction into question.  In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Therefore, when a Plaintiff seeks damages in a § 1983 suit for actions taken in the course of his arrest and criminal prosecution, the Court must consider whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence.  If it would have that effect, the Complaint must be dismissed unless the Plaintiff can demonstrate that the conviction or sentence has already been invalidated.  *Id.*  If the Court determines that the Plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the Plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.  *Id.*

In this case, Meyers claims Mitrovich violated his constitutional rights when he reversed an order of Judge Cicconetti, prohibited him from using prior suppression hearing transcripts to impeach witnesses, "systematically denied" his right to cross-examine witness, and permitted the prosecutor to withhold exculpatory evidence.  (ECF No. 1 at 5).  If found to have merit, these claims

13

(1:14cv1604)

would call the validity of his convictions into question.  While Meyers's conviction on one charge was reversed, the other convictions were affirmed.  He cannot bring these claims in the § 1983 action.

### 2.  Judicial Immunity

Furthermore, Judge Mitrovich is entitled to absolute judicial immunity from damages for claims arising from decisions he made from the bench in the course of Meyer's criminal case. Judicial officers are absolutely immune from civil suits.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  This far-reaching protection is needed to ensure that the independent and impartial exercise of judgment is not impaired by the exposure of potential damages.  *Barnes*, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed in the judge's judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  Meyers does not allege facts to suggest either of these criteria has been met.

The determination of whether an action is performed in the Defendants' judicial capacity, depends on the "nature" and "function" of the act, not on the act itself.  *Mireles*, 502 U.S. at  13; *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Looking first to the "nature" of the act, the Court must determine whether it is a function generally performed by a judge.  *Stump*, 435 U.S. at 362. This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges.  *Mireles*, 502 U.S. at 13.  Second, an examination of the "function" of the act

14

(1:14cv1604)

alleged requires the Court to assess whether the parties dealt with the judge in his or her judicial capacity.

Meyers does not contest that Mitrovich was acting in his capacity as a judge when he presided over his criminal case.  Nevertheless, it is evident on the face of the pleading that Mitrovich was acting in his judicial capacity at all times that the conduct alleged in the Complaint occurred.  The issuance of judicial orders and rulings pertaining to the introduction of evidence, and conduct of a trial are all functions performed by a judge.  Furthermore, Meyers only alleges interaction with Mitrovich when he was performing his duties as a judge.  He cannot overcome the broad application of judicial immunity under this criterion.

Instead, Meyers relies on the second criterion to attempt to defeat absolute immunity for Mitrovich.  Under this rule, judicial immunity can be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction of the court over which the judge presided.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. (emphasis added.)  When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed.  *Stump*, 435 U.S. at 356-57.  A judge will be not deprived of immunity because the action he took was performed in error, done maliciously, or was in excess of his authority.  *Id.*  Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides.  *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122.  Conversely, merely acting in excess of authority does not preclude immunity.  *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In this case, Meyers contends Mitrovich lacked jurisdiction to preside over his criminal case

15

(1:14cv1604)

because he was never issued a Certificate of Assignment by the Ohio Supreme Court. Judge Mitrovich, however, supplied a copy of the Certificate of Assignment signed by the Chief Justice of the Supreme Court of Ohio. (ECF No. 26-1 at 1). Meyers's assertion is without merit. Municipal courts "have jurisdiction within the corporate limits of their respective municipal corporations" and can exercise that jurisdiction over "the violation of any misdemeanor committed within the limits of [their] territory." OHIO REV. CODE §§ 1901.02(A) and 1901.20(A)(1); *State ex rel. Wellington v. Kobly*, 112 Ohio St.3d 195, 198 (2006). At best, Meyers contends Mitrovich made decisions which were incorrect under the law. There are no allegations in the Complaint which suggest Mitrovich acted outside the subject matter jurisdiction of the Painesville Municipal Court. Judge Mitrovich is therefore entitled to absolute immunity in this matter and his Motion to Dismiss (ECF No. 9) is **granted.**

### C. Szeman, Smith, and Shannon Official Capacity Claims

Szeman, Smith, and Shannon all indicate that the claims asserted against them in their official capacities are based on *respondeat superior* and should be dismissed. A suit against a public servant in his or her official capacity imposes liability on the municipality he represents. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Szeman, Smith, and Shannon are all employed by the Village of Madison. Consequently, Meyers's claims against these Defendants in their official capacities are redundant, as they are all construed against the Village of Madison.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a

16

(1:14cv1604)

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). The Complaint contains no suggestion of a specific custom or policy of the Village of Madison which may have led to a violation of Meyers's constitutional rights. The claims against these Defendants in their official capacities are dismissed.

### D. **Dawn Shannon Individual Capacity Claims**

In her Motion to Dismiss, Shannon contends the claims against her in her individual capacity are also based on *respondeat superior*. Shannon is the Chief of Police of the Madison Village Police Department. Meyers alleges that Shannon, in her capacity as Chief, failed to discipline and to properly train Smith in the use of force.

As with claims against a municipality, claims against a supervisor under 42 U.S.C. § 1983 cannot be based on a theory of *respondeat superior*. *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). A supervisor's liability cannot be based solely on his or her right to control employees, nor "simple awareness of employees' misconduct." *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson*

(1:14cv1604)

*County,* 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a Plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays,* 668 F.2d at 874); *see Rizzo,* 423 U.S. at 371. The mere "failure to act [even] in the face of a statistical pattern" of incidents of misconduct is insufficient to base liability. *Rizzo,* 423 U.S. at 376.

Meyers does not allege facts to support his claim against Shannon. His cause of action against her is stated solely as a legal conclusion. There is no suggestion in the Complaint that she was aware of the incident that took place, and encouraged Smith's actions or in any way directly participated in them. Legal conclusions are not sufficient to state a claim. *Twombly,* 550 U.S. at 555-56. Furthermore, absent factual allegations to explain his claim, it appears to be based solely on Shannon's supervisory position within the Madison Village Police Department. Meyers fails to state a claim upon which relief can be granted against Shannon in her individual capacity.

### E. **Joseph Szeman**

Szeman further asserts he is entitled to absolute prosecutorial immunity for the claims asserted against him in his individual capacity. Prosecutors are also entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman,* 424 U.S. 409, 431 (1976); *Pusey v. Youngstown,* 11 F.3d 652, 658 (6th Cir. 1993). A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court. *Skinner v. Govorchin,* 463 F.3d 518, 525 (6th Cir. 2006). This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages. *Id.* These suits could be expected with

18

(1:14cv1604)

some frequency, for a Defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's attorney. *Imbler*, 424 U.S. at 424-25; *Skinner*, 463 F.3d at 525. Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003). Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Imbler*, 424 U.S. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The immunity also reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ... judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990). In this instance, the challenged actions of Szeman were all intimately associated with the judicial phase of Meyers's prosecution. Consequently, he is entitled to absolute immunity. Szeman's Motion to Dismiss (ECF No. 18) is **granted.**

### F. Conspiracy Claims under 42 U.S.C. § 1983

All of the Defendants assert Meyers failed to allege sufficient facts to plausibly suggest they engaged in a civil conspiracy. A civil conspiracy under 42 U.S.C. § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011); *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). To prevail on a civil conspiracy claim, a Plaintiff must show that: (1) a single plan existed; (2) all of the Defendants shared in the general conspiratorial objective to deprive the Plaintiff of his constitutional (or federal

19

(1:14cv1604)

statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" the Plaintiff.  *Bazzi,* 658 F.3d at 602 (citing *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).  "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved."  *Id.*  Nevertheless, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.  *Id.*; *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  A Plaintiff must allege sufficient factual allegations to link the alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (holding that Plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

In this case, Meyers's allegations of conspiracy are stated solely as legal conclusions and do not meet the requisite degree of specificity needed to sustain a § 1983 conspiracy claim.  He does not allege facts to show that there was a single plan, he does not allege facts that actually link the Defendants together as conspirators, and he does not allege facts to suggest there was a "meeting of the minds."  He simply concludes that the Defendants conspired together.  These conclusory allegations are not sufficient to meet the degree of specificity required for conspiracy claims.

Furthermore, to state a claim for civil conspiracy under § 1983, a Plaintiff must allege not only that the Defendants conspired under color of state law to deprive him of his constitutional rights, but also that he was in fact deprived of those rights.  *Vaden v. Village of Maywood, Ill.*, 809

(1:14cv1604)

F.2d 361, 366 (7th Cir. 1987).  In his Complaint, Meyers asserts the Defendants conspired to: (1) cover up Smith's use of excessive force in the course of his arrest; (2) deprive him of his weapon without due process; (3) engage in malicious prosecution; (4) deny him equal protection; and (5) deny him the right to bring criminal charges against public officials through a grand jury proceeding. In addition, he generally states the Defendants conspired to violate his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.

### 1.  First, Sixth and Eighth Amendment Claims

While Meyers indicates he is asserting conspiracy claims under the First, Sixth, or Eighth Amendments, he does not allege facts in the Complaint which could reasonably be construed to state a claim for relief under one of these Constitutional Amendments.  These claims are stated solely as legal conclusions.  Although the standard of review for *pro se* pleadings is liberal, it requires more than bare assertions of legal conclusions.  *Bassett*, 528 F.3d at 437; *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726-27 (6th Cir. 1996).  The Complaint must give the Defendants fair notice of what the Plaintiff's claims are and the grounds upon which they rest.  *Bassett*, 528 F.3d  at 726. Meyers's claims under the First, Sixth, or Eighth Amendments are not sufficiently defined to meet this basic pleading requirement.

### 2.  Excessive Force - Fourth Amendment

Meyers asserts Smith used excessive force against him and the other Defendants conspired to cover up the use of excessive force.  In addition to satisfying the probable cause standard, the Fourth Amendment requires arrests be conducted in a reasonable manner. *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1984); *see also McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988).  "Every push

(1:14cv1604)

and shove an officer makes during the arrest," however, will not rise to the level of a constitutional violation even if it may later seem unnecessary. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002); *Collins v. Nagle*, 892 F.2d 489, 496 (6th Cir. 1989) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987)). The power to arrest necessarily carries with it the power to use some force to make an arrest. *Id.* Whether a police officer has used excessive force in effecting an arrest depends on whether the officer's conduct is "objectively reasonable" in light of the existing facts and circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Whether the officer employed the least forceful alternative is not determinative in excessive-force claims. *Marcilis v. Redford Tp.,* 757 F.Supp.2d 663, 673 (E.D. Mich., 2010).

The actions of Smith that Meyers describes do not reasonably suggest Smith acted unconstitutionally in effecting the arrest. Meyers does not allege Smith used any physical force against him. Rather, Meyers alleges Smith drew his weapon and ordered Meyers to exit his vehicle. Meyers also alleges that Smith stated he would "blow his head off." (ECF No. 1 at 4). Officers may proceed to point their weapons at an individual whom they honestly, even if mistakenly, believe to be dangerous. *See Kelley v. McCafferty*, No. 07–3816, 2008 WL 2604328 (6th Cir. June 26, 2008);

22

(1:14cv1604)

*see also Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009)("[T]he critical point: while police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there is reason to fear danger").  Conversely, "law enforcement officers may not point weapons at suspects [who] pose no threat" because "the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force." *Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1192 -1193 (10th Cir. 2001)*.  In other words, as with any use of force, the threatened use of a weapon must be predicated on at least a perceived risk of injury or danger to the officer or others, based upon what the officer knew at that time.  *Id.*  There is a key distinction between the situation where an officer points his gun in a show of force to "abort a potentially violent situation" *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989) (quoting *Hinojosa v. Terrell*, 834 F.2d 1223, 1231 n. 10 (5th Cir. 1988), and the situation in which the officer points a gun at a restrained individual whom no objectively reasonable officer could believe poses a continuing threat. *See Collins*, 892 F.2d at 497 ("[T]o subject ... displays of force to second guessing by a jury may increase the likelihood that the officer will wait until the situation escalates further before drawing his gun, and thereby end up having to (or believing he has to) shoot to protect himself or others.")

Here, assuming the level of force alleged by Meyers to be true, this force was not excessive in the context of this arrest.  Smith's perception of danger to himself and others was objectively reasonable when he saw a handgun within Meyers's reach and Meyers refused to keep his hands on the wheel as instructed.  Meyers acknowledges Smith calmly asked him to exit the vehicle and holstered his gun.  Thereafter, they waited beside the truck for back-up to arrive.  The use of force in this situation was not excessive.

23

(1:14cv1604)

Similarly, Smith did not use excessive force in threatening to "blow [Meyers'] head off." Meyers did not elaborate on when in the sequence of events this occurred; however, it was likely done during the brief period of time when the gun was pulled from its holster.  The analysis of the totality of the circumstances remains the same as stated above.  Although Meyers contends he was afraid when Smith pulled his gun from its holster, fear from [threats], alone, is not an actual infringement of a constitutional right.  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (citing *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985) (per curiam)); *Wright v. Depew*, No. 2:07–CV–166, 2010 WL 2594398, at *4-9 (E.D. Tenn. June 22, 2010) (finding the officer's action of pulling his service weapon, pointing it at the driver of a car and yelling that he would "blow his brains out" was not excessive force in light of the fact the driver had a weapon within reach in the car).

Meyers alleges the other Defendants conspired to cover up Smith's use of excessive force. Because Smith did not use excessive force in this situation and did not violate Meyers's constitutional rights, the Defendants cannot be held liable in a § 1983 action for conspiring to cover up his actions.

### 3.  Deprivation of Property - Fourteenth Amendment

Next, Meyers claims the Defendants conspired to deprive him of his weapon without due process.  The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The Fourteenth Amendment makes the Due Process Clause applicable to the states by providing that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  In addition to

24

(1:14cv1604)

setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

To prevail on a procedural due process claim, Meyers must plead and prove either: (1) that he was deprived of property as a result of an established state procedure that itself violates due process rights; or (2) that the Defendants deprived him of property pursuant to a random and unauthorized act and that available state remedies would not be adequate to redress the deprivation of property. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). Meyers does not indicate that he is challenging a specific established state procedure. Instead, it appears he is asserting his weapon was impounded and not returned due to unauthorized acts of the Defendants.

To state a claim for relief based on unauthorized acts of the Defendants, Meyers must also plead and prove that state remedies for redressing the wrong are inadequate. *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064. It is his burden to make that showing. *Vicory*, 721 F.2d at 1066 ("In a procedural due process case under section 1983, the Plaintiff must attack the state's corrective procedure as well as the substantive wrong"). A remedy is available in the Ohio Court of Claims. *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). Meyers has not alleged that this remedy is inadequate to redress the deprivation. He therefore has not stated a claim for conspiracy to deny

25

(1:14cv1604)

him procedural due process.

### 4.  **Malicious Prosecution**

Meyers claims the Defendants conspired to subject him to malicious prosecution.  The Sixth Circuit recognizes a claim of malicious prosecution under the Fourth Amendment which encompasses wrongful investigation, prosecution, conviction, and incarceration.  *Barnes v. Wright,* 449 F.3d 709, 715-16 (6th Cir. 2006).  To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, Meyers must prove the following: (1) a criminal prosecution was initiated against him and that the Defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) "as a consequence of a legal proceeding," Meyers suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding must have been resolved in his favor.  *Sykes v. Anderson,* 625 F.3d 294, 308-10 (6th Cir. 2010).

As an initial matter, Meyers does not allege facts to suggest there was a lack of probable cause for his prosecution.  Indeed, he was convicted on all of the charges.  On appeal, his conviction on one of these charges was reversed due to an improper jury instruction and the state declined to retry him on this charge.  His convictions on the other three charges, however, were affirmed.  He therefore failed to meet the second and fourth elements of a cause of action for malicious prosecution.  Moreover, of the named Defendants, Meyers only alleges that Szeman made the decision to prosecute him.  Szeman, however, is absolutely immune from suit for making the decision to initiate a prosecution.  *Imbler,* 424 U.S. at 431.  Meyers has not satisfied the first element

26

(1:14cv1604)

of the cause of action.  Finally, Meyers did not allege facts to suggest that apart from his initial seizure, he was deprived of his liberty as a consequence of the legal proceeding.  He does not suggest he was held in jail awaiting trial.  He fails to state a claim for conspiracy to subject him to malicious prosecution in violation of the Fourth Amendment.

### 5.  **Equal Protection**

Meyers also contends the Defendants conspired to deny him equal protection.  He does not explain this claim and offers no facts to support the allegation.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.  Meyers does not demonstrate that he was treated differently from others who were in his position.  Absent an allegation of disparate treatment, Meyers has not stated a claim for conspiracy to deny him equal protection.

### 5.  **Right to Bring Criminal Charges**

Meyers next claims the Defendants conspired to deny him the ability to bring criminal charges against the Defendants through the grand jury.  He cites to no particular constitutional right giving rise to this cause of action.  At best, it could be construed as asserting a denial of due process.

27

(1:14cv1604)

As an initial matter, Meyers gives no indication of the crimes he believes the Defendants to have committed against him.  To the extent any crimes were committed by the Defendants, and there is no indication that any laws were broken, Meyers has no constitutional right to have that evidence submitted to a grand jury.  The benefit that a third party may receive from having someone else arrested and prosecuted for a crime does not trigger protections under the Due Process Clause, either in its procedural or in its substantive forms.  *Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 575 (6th Cir. 2006).  Meyers did not have a protected property interest in bringing criminal charges against the Defendants.

Because Meyers failed to state a claim for use of excessive force in the course of his arrest, deprivation of his weapon without due process, malicious prosecution, denial of equal protection, denial of the right to bring criminal charges against public officials through a grand jury proceeding, or violation of his First, Sixth, or Eighth Amendment rights, he has not stated a claim for civil conspiracy under § 1983 in violation those rights.  *Vaden v. Village of Maywood, Ill.*, 809 F.2d 361, 366 (7th Cir. 1987).  His conspiracy claims under 42 U.S.C. § 1983 are dismissed.

### G.  Conspiracy Claims under 42 U.S.C. §§ 1985 and 1986

Finally, Meyers asserts conspiracy claims under 42 U.S.C. §1985.  To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to 42 U.S.C. § 1985, Meyers must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of Plaintiff or deprivation of any right or privilege of a citizen of the United States.  *Vakilian v. Shaw,* 335 F.3d

28

(1:14cv1604)

509, 518 (6th Cir. 2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)).  The acts that allegedly "deprived the Plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir. 1992)).  As with his conspiracy claim under § 1983, Meyers fails to state an adequate claim if his allegations are premised upon mere conclusions and opinions.  *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).  He must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy.  *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993) (holding that Plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

In this case, Meyers does not assert that the alleged conspiracy was the result of class-based discrimination.  He gives no indication of his race, nationality, or religion, and does not suggest how these or any other facts such as gender motivated the conspiracy.  He fails to state a claim for relief under § 1985.

Because Meyers failed to state a claim under § 1985, his claims for relief under § 1986 must also be dismissed.  Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them.  Without a violation of § 1985, there can be no violation of § 1986.

## IV.  Conclusion

Accordingly, the Motions to Dismiss filed by Byers (ECF No. 8), Mitrovich  (ECF No. 9), Smith (ECF No. 17), Szeman (ECF No. 18) and Shannon (ECF No. 19), are granted.  Meyers's Motion for Preliminary Injunction (ECF No. 2), Motion for Objection and/or Motion to Strike

29

(1:14cv1604)

Defendant Paul Mitrovich's Motion to Dismiss (ECF No. 22), Motion for Declaratory Judgment (ECF No. 23), Motion for Demand for Default Judgment (ECF No. 25), Objection to and/or Motion to Strike Defendant Mitrovich's Reply in Support of Motion to Dismiss (ECF No. 32), and Objection and/or Motion to Strike Defendants (Smith, Shannon, Szeman, and Byers) Motions to Dismiss and Opposition to Meyer's Motion for Preliminary Injunction (ECF No. 34) are denied.  Although the Court notes that Smith's Motion to Dismiss (ECF No. 17) only sought partial dismissal, no viable claims remain against him or any other Defendant after addressing the Motions of the other Defendants.  This case is dismissed with prejudice.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


 January 30, 2015                              /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

30